IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO: 1:09-cr-21010-JEM

THE UNITED STATES OF AMERICA,

    Plaintiff,

v.

CARLOS RODRIGUEZ,

    Defendant.

### DEFENDANT RODRIGUEZ' REPLY TO THE GOVERNMENT'S RESPONSE TO MOTION FOR BOND PENDING APPEAL AND MEMORANDUM OF LAW

The Defendant, CARLOS RODRIGUEZ, through undersigned counsel, replies to the Government's Response in Opposition to his Motion for Bond Pending Appeal, and states:

**I.**    **INTRODUCTION:**

The Government's Response acknowledges that Carlos Rodriguez is not a flight risk and agrees that if this Court could should deny Carlos Rodriguez' request for bond pending appeal, that he should be permitted to self surrender. This Reply, therefore, only addresses the Government's position that Carlos Rodriguez will not have meritorious issues on appeal that will raise a substantial question of law or fact likely to result in reversal.

## II. MERITORIOUS ISSUES ON APPEAL LIKELY TO RESULT IN REVERSAL:

Rodriguez respectfully submits that the following, non-exhaustive discussion of jury instruction and newly discovered evidence issues are likely to result in reversal. However, by limiting this submission to just those issues, the Defendant does not concede or suggest that the other issues set forth in his Motion for Bond are not likely to result in reversal.

### A. JURY INSTRUCTION ISSUES:

As this Court is aware, the Eleventh Circuit has not addressed the jury instructions necessary in an FCPA prosecution, and relatively few cases have been tried before a jury throughout the United States.[1] Defense counsel raised three issues regarding the FCPA jury instructions provided in this case that counsel believes will likely result in reversal of this cause for a new trial. Those issues are discussed in turn below:

**(1) Whether the Court's instruction required the jury to find that the Defendant knew that the individual bribed was a foreign government official operating in his/her official capacity?**

---

[1] The Government's Supplemental Response to Rodriguez' Motion for Judgment of Acquittal and/or New Trial complains that the Defendant raised additional arguments regarding the jury instruction issues in his Reply. While it may have been better to refer to the arguments as additional or supplemental "authorities" rather than "additional arguments," the Record shows that the issues raised and arguments were not new. Both before and during trial, specific objections regarding the FCPA and the deliberate ignorance instructions were raised, which were reincorporated in Rodriguez' Rule 29 and post trial motions. ECF No. 403-1 at p. 6, ECF No. 542 at p. 4, and Tr. 8/3/11 AM at pp. 13-14.

Before trial, defense counsel submitted a proposed instruction that requested, *inter alia*, that the Court instruct the jury:

> Fourth, the Defendant either paid, or offered, promised, or authorized the payment of, money or anything of value (directly or indirectly) <u>to a person the Defendant knew to be a foreign official</u>.

ECF. No. 403-1 at p. 6 (emphasis added).

The Government argued that the FCPA instruction clearly required the jury to find that the defendant knew the individual bribed was a foreign official by pointing to the language in the definition of "corruptly." See, Govt. 2d Resp. to Motion for Judgment of Acquittal at New Trial (ECF No. 561) at 3, and Court's Instructions (ECF No. 520) at 22-33.[2] However, that argument fails because the definition of corruptly did not require the jury to find that Rodriguez knew that the person paid was a foreign official. Instead, the instruction addresses the purpose of the payment as being "to induce the foreign official." One could easily conclude that the purpose of a payment is to induce a person whom the jury separately finds is a foreign official without necessarily finding that the defendant knew the person was a foreign official. Accordingly, the definition of "corruptly" was not sufficient

---

[2] An act is "corruptly" done if done voluntarily and intentionally, and with a bad purpose or evil motive of accomplishing either an unlawful end or result, or a lawful end or result but by some unlawful method or means. The term "corruptly" in FCPA is intended to connote that the offer, payment, or promise was intended to induce the foreign official to misuse his or her official position.

to require the jury to find that Rodriguez knew that the person was a foreign official.

The Government alternatively argued that the following language on page 21 of the jury instructions required the jury to find that Rodriguez knew the person was a foreign official:

> That the payment or gift was to a foreign official or to any person, while the defendant knew that all or a portion of the payment or gift would be offered, given, or promised, directly or indirectly, to a foreign official;

ECF No. 520-21 at ¶ 5.

Like the definition of corruptly, the jury could find that the payment was to a foreign official without necessarily finding that Rodriguez knew that the person was a foreign official. And, the reason is simple: the word "knew" modifies the phrase "payment or gift," and does not specifically require the jury to find that Rodriguez himself knew the person who received the payment or gift was a foreign official at the time of the offense.

The language in the Defendant's proposed instruction, like the proposed instruction in *Carson* set forth in Defendant's Reply, clearly required the jury to find that the person the Defendant paid was "a person the Defendant knew to be a foreign official." ECF No. 403-1 at p. 1. The Defendant's proposed instruction was a clear and unequivocal statement of the law that would not allow a juror to

-4-

improperly convict the Defendant where there was a lack of evidence to prove the Defendant knew that the person bribed was a foreign government official.

Lastly, the Government's suggestion that the closing argument of counsel should substitute for the lack of a proper jury instruction is equally misplaced. The Court's instructions specifically caution the jury from substituting arguments of counsel for evidence or ignoring the Court's instructions on the law. (See ECF No. 520-2, 4).

Thus, as to whether the FCPA jury instruction clearly required the jury to find that Rodriguez knew the individual paid was a foreign official working in his or her official capacity, Rodriguez' appeal will raise a substantial question as it is "[i]t is a "close" question or one that very well could be decided the other way." See *United States v. Giancola*, 754 F.2d 898, 901 (11th Cir. 1985).

**(2)    Whether, based upon the charges in the indictment, the Court's instruction regarding state owned enterprises, improperly instructed the jury to find that Haiti Teleco was an agency of the Republic of Haiti at the time of the offense?**

The Defendant's requested jury instructions and objections to the Government's proposed instructions before and during trial raised constitutional and specific objections to the definition of instrumentality as including "state-owned enterprises." As noted in the Defendant's memorandum accompanying his proposed jury instructions on "foreign official" and "instrumentality," there is strong evidence that Congress specifically chose not to include a definition of

-5-

instrumentality that included "a legal entity established, owned or subjected to managerial control by a foreign government." (ECF No. 404 at pp. 2-3).

In addition, without waiving the foregoing objection, defense counsel proposed a specific definition of a state-owned enterprise that included numerous elements not present in the Court's instruction. First, the Court's instruction failed to require the jury to find each element used to determine that an entity was a state-owned entity beyond a reasonable doubt. Rather, the Court's instruction simply listed factors that the jury "may consider," but did not require any the jury to unanimously find any specific elements beyond a reasonable doubt. Second, the Court's instruction did not require to jury to consider how Haiti Teleco was formed, or whether the laws of the country defined the employees of Haiti Teleco as government officials or employees. How an entity is formed, or later transformed, is essential to determine whether an entity is public or private. By way of comparison, corporations used in this country to perform government functions or objectives were created by Congress. *See Lebron v. Nat'l R.R. Passenger Corp.,* 513 U.S. 374, 386, 115 S. Ct. 961, 130 L. Ed. 2d 902 (1995) (recounting "the long history of corporations created and participated in by the United States for the achievement of governmental objectives."). Third, the Court's instruction improperly permitted the jury to consider the general opinion of individuals regarding the status of Haiti Teleco in determining whether it was an

instrumentality/state-owned enterprise. The opinion of the government's witnesses - especially those who are not qualified as experts – is irrelevant, especially where, as here, the entity, Haiti Teleco, was not created by the Republic of Haiti, nor was it officially or legally transformed into a government entity. In addition, the error in allowing such general opinions to be considered as an element (or consideration), further augments the error resulting from the failure to instruct the jury that they must determine how Haiti Teleco was created, and what, if any, steps were taken to transform it into a government instrumentality. As a result, the Court's instructions improperly lowered the Government's burden of proof and exposed the Defendant to criminal liability for conduct not defined in the FCPA.

The foregoing arguments thus demonstrate that Rodriguez' appeal will raise substantial questions regarding the FCPA instructions and that they are at a minimum, '"close" question[s] or one[s] that very well could be decided the other way." See *United States v. Giancola*, 754 F.2d 898, 901 (11th Cir. 1985).

### (3) Whether, based upon the evidence produced at trial, the Court improperly instructed the Court on deliberate ignorance in the FCPA and money laundering charges?

A deliberate ignorance instruction is not proper merely because the FCPA contains language allowing for it, or because the indictment alleges money laundering. Before a deliberate ignorance instruction may be given in any case, the proof must show that there was evidence that the defendant was aware of "high

probability" that there were illegal payments being made and defendant was deliberately, or "studiously sought to avoid knowing what was plain." *United States v. Kozeny,* 664 F Supp 2d 369, 388 (SD NY 2009)(FCPA case).  Indeed, the Eleventh Circuit has similarly held that a deliberate ignorance instruction is only appropriate where the facts "support the inference that the defendant was aware of a *high probability* of the existence of the fact in question and *purposely contrived* to avoid learning all of the facts in order to have a defense in the event of a subsequent prosecution."  *United States v. Schlei,* 122, F.3d 944, 973, (11th Cir. 1997)(SEC violations)(emphasis added).

During trial and in post trial submissions, defense counsel objected to the Government's requested jury instruction on deliberate ignorance.  See Tr. 8/3/11 AM at pp. 13-14 and Motion for Judgment of Acquittal or New Trial, ECF No. 542 at p. 4.  Specifically, after the Government based its request for deliberate ignorance instructions on the questions that defense counsel asked during cross-examination focusing on the fact that Rodriguez did not know facts material to the crimes charged; not evidence the Government adduced.  Rodriguez' counsel argued:

> MR. HERNANDEZ:    I have two objections. I have a constitutional objection under the due process clause that this instruction diminishes the Government's burden of proof.  These are specific intent crimes and I believe that the deliberate ignorance instruction is unconstitutional. So I want to preserve that objection.

> THE COURT: Okay.
>
> MR. HERNANDEZ: Secondly, I want to object because any statement that I made during the trial is not evidence in the case. The Court has already instructed the jury on that and will instruct the jury one more time on that question.
>
> THE COURT: But the questions that you asked adduced answers and that's what I think is the argument. I agree with you that your opening statement was not evidence, but your cross-examination did adduce responses.
>
> MR. DIAZ: [sic] Absolutely. And I'm entitled to show the paucity of evidence on the essential elements of the crime. That does not generate an instruction of deliberate ignorance when there is no factual predicate for that. The factual predicate for a deliberate ignorance is not based upon an argument that an essential element of the crime has not been satisfied. That the Government has not sustained its burden of proof. That does not perfect the question of deliberate ignorance. What perfects the issue of deliberate ignorance is when there is a factual predicate, when someone is told something or someone is shown something and there is deliberate avoidance of knowledge and there is no evidence of deliberate avoidance of knowledge. He ran the accounting department.

Tr. 8/3/11 AM at pp. 13-14.

The evidence at trial did not show that there was a high probability that CARLOS RODRIGUEZ was aware that the individual that Tony Perez met with to discuss pro-rations or reductions of Teleco's bills was a Haitian government official working in his official capacity, or that Teleco was part of the administration of or an instrumentality of Haiti. Accordingly, the evidence did

not support an inference that CARLOS RODRIGUEZ "was aware of a *high probability* of the existence of the fact[s] in question and *purposely contrived* to avoid learning all of the facts in order to have a defense in the event of a subsequent prosecution." Thus, the providing the deliberate ignorance instruction as to the FCPA as well as the money laundering offenses was error. As a result, Rodriguez' appeal will raise substantial questions regarding the deliberate ignorance instructions given, and that the issue is, at a minimum, a '"close" question or one that very well could be decided the other way." See *United States v. Giancola*, 754 F.2d 898, 901 (11th Cir. 1985).

In addition, defense counsel preserved a constitutional objection to the deliberate ignorance instruction, which has yet to be considered by the United States Supreme Court. While the Court may not find that such a constitutional objection is at this juncture a close question, most jurists would have likewise found that the constitutional objections raised in *Apprendi* and *Booker* were not close before 2000 and 2005.[3] Thus, the Defendant respectfully reminds this Court that there is a paucity of case law in FCPA cases addressing the foregoing issues, and as a result, that the constitutional issue raised very well could be decided the other way.

---

[3] See *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348 (2000) and *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738 (2005).

> **B.  Whether the First Bellerive Declaration Contained Newly Discovered Evidence, and Whether it was Reversible Error not to Grant Discovery and an Evidentiary Hearing?**

The Government's submissions and the Court's orders misapprehend what evidence is new. The Government's submissions assert that the new evidence simply focuses on whether Teleco Haiti legally or properly began to use the S.A.M. acronym in its name. (See Govt's Supplemental Response at ECF-599-7 and Govt Response re Rodriguez's Motion to Compel at ECF-592-1). However, Rodriguez' Motion for New Trial focuses on the *official legal position of the Republic of Haiti that Teleco "has never been and until now is not a State enterprise;"* not on the use of "S.A.M." in Teleco's name. (See Rodriguez Motion for New Trial, at ECF 543-3 & 6).

The official position of the Republic of Haiti disproving an essential element of the FCPA offense is irrefutably new, and irrefutably exculpatory. Further, the fact that the evidence comes directly from the current Haitian government itself – rather than a former official, Lissade, who was not a foreign official at the time of the charged offenses – demonstrates that the evidence would have been clearly relevant and highly persuasive for the jury to address the issue of whether Teleco was an instrumentality of the Haitian government. As a result, the issue of whether the prosecution knew that the official position of the Haitian government

was that Teleco was not a State enterprise and thereafter sought to suppress it, is a matter ripe for discovery and an evidentiary under *Espinosa-Hernandez*.[4]

Further, *Espinosa* makes clear that the existence of corroborative testimony supporting the challenged testimony is not dispositive. The Eleventh Circuit disagreed with the District Court's view in *Espinosa* of the impact of the corroborative evidence at a new trial, because the corroborative testimony was hotly contested. *Id.* at 913-914. Here, the issue of whether Teleco was part of the Haitian government was hotly contested. As in the United States, the mere regulation of a business such as the telephone industry does not transform it into a government entity. The opinion of Lissade was based upon unclear guidelines, missing records, Teleco's unauthorized use of the S.A.M. acronym and the unlawful appointment of officers to Teleco by the deposed President Aristide.

Moreover, the record before this Court clearly showed that the Government had direct access to and the cooperation of the government of Haiti for several years – yet ironically claimed that it was unaware of the Prime Minister's unequivocal official position set forth in the First Declaration that Haiti Teleco *never* was a State enterprise of the Republic of Haiti. The "clarification" of that First Declaration with a Second Declaration (completely reversing that

---

[4] The Eleventh Circuit held that the trial court abused its discretion in denying the motion without first ordering discovery and conducting an evidentiary hearing to address the impact of the new evidence and explore when the United States Attorney's Office learned of it. *Id.* at 913-914.

-12-

unequivocal statement) is nothing less than highly suspect – especially where here, the reason expressed for the need for clarification is a false statement.

More particularly, the false statement in the Second Declaration was that the First Declaration was "signed strictly for internal purposes and to be used in support of the on-going modernization process of Teleco." See, ECF No. 580 at Ex. "B" - Second Declaration at ¶ 2. While at first blush that claim may seem logical, the documentary evidence reveals that the First Declaration was not issued for the modernization process. Rather, the First Declaration was issued pursuant to a request from counsel for Patrick Joseph, Richard Klugh, Esq.,[5] requesting an official statement from the Republic of Haiti regarding the Haitian law and status of Haiti Teleco, and not a request for a letter from anyone involved in the modernization process. See Klugh Letter attached to ECF No. 580 as Ex. "D."[6]

Moreover, the "modernization" of Haiti Teleco consisted of the purchase of a majority of Teleco's shares of stock by a Vietnamese company named Viettel <u>in early 2010</u> – <u>over a year prior to trial</u>. And, assuming that the First Declaration somehow had some purpose in the Viettel's stock purchase in Teleco, one would expect the declaration to at least mention Viettel, and for the cover letter to Mr.

---

[5] Counsel for Rodriguez was not aware of Richard Klugh's letter at the time of filing his motions for Judgment of Acquittal and/or new trial.

[6] The Klugh letter is also attached as Exhibit "D" to the Joint Request for Status Conference filed by all defense counsel of record.

Klugh <u>not</u> to match the date of the declaration only prepared for internal purposes. See cover letter attached to ECF No. 580 at Ex. "E." Further, Second Declaration failed to mention how or for what specific purpose the First Declaration was needed in order to somehow facilitate Teleco's already completed sale to Viettel. Compare Paragraph 2 of Second Declaration (ECF No. 580, Ex. "B") to articles regarding the 2010 Viettel stock purchase attached at ECF No. 580 at Composite Ex. "G."[7]   Additionally, both the First Declaration and the cover letter from Jean Max Bellerive addressed to attorney Klugh remarkably bear the date of July 26, 2011. See ECF No. 580, Exhibits "D" and "E." No evidence exists that would suggest that Klugh requested the letter on behalf of Viettel or as part of any modernization process in Haiti.

Thus, it is irrefutable that the assertion in the Second Declaration that the First Declaration needed clarified because it was "signed strictly for internal purposes and to be used in support of the on-going modernization process of Teleco" is a false statement. The false nature of the statement reveals that the circumstances under which the Second Declaration was written – with the

---

[7] Book-marked by date. The newspaper articles are also available on the internet at http://www.cfihaiti.net/j10/index.php?option=com_content&task=view&id=1058&Itemid=106, http://en.baomoi.com/Home/sciencetechnology/cpv.org.vn/Viettel-expands-operations-in-Haiti/101793.epi; http://www.mpi.gov.vn/portal/page/portal/mpi_en/32343?pers_id=417332&item_id=9527562&p_details=1, and http://ayitinou.com/article-posts/29-haitian-articles/2932-great-news-for-the-haitian-people-in-haiti-viettel-officially-enters-haitian-telecom-market.html.

assistance of the prosecution team -- are highly suspect. As a result, as in *Espinosa*, discovery and an evidentiary hearing should have been ordered to assess when the Government first learned that the Republic of Haiti and the Prime Minister of the Republic of Haiti never considered Teleco to be a government entity, and the role of the United States Government in causing a reversal of the Haitian Government's position on that issue as well as the utterance of the false statement in the Second Declaration. As a result, Rodriguez' appeal will raise substantial questions regarding the Court's decision to deny Rodriguez' motion to compel discovery and an evidentiary hearing and his post-trial motions. Those issues are, at a minimum, a '"close" question[s] or one[s] that very well could be decided the other way." See *Espinosa* and *United States v. Giancola*, 754 F.2d 898, 901 (11th Cir. 1985). Accordingly, it appropriate to grant CARLOS RODRIGUEZ bail pending appeal.

              Respectfully submitted,

              */s/ Arturo V. Hernandez*_____
              **Arturo V. Hernandez**
              **Counsel for Carlos Rodriguez**
              Florida Bar No. 324078
              2937 S.W. 27th Avenue, Suite 101
              Miami, Florida 33133
              Telephone: (305) 443-7527
              Facsimile: (305) 446-6150
              Email: avhlaw@bellsouth.net

						***/s/ Rhonda A. Anderson*_____**
						**RHONDA A. ANDERSON, ESQ.**
						**Counsel for Carlos Rodriguez**
						Fla. Bar No. 708038
						2655 LeJeune Road, Suite 540
						Coral Gables, Florida 33134
						Telephone:  (305) 567-3004
						Facsimile:   (305) 476-9837
						E-Mail:        randersonlaw@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of October 2011, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all parties, including the following:

| | |
|---|---|
| **Nicloa J. Mrazek, Esq.** and<br>**James M. Koukios, Esq.**<br>Senior Trial Attorneys<br>Fraud Section, Criminal Div.<br>United States Dept. of Justice<br>1400 New York Ave., N.W.<br>Washington, D.C. 20009<br>Email: Nicola.mrazek@usdoj.gov,<br>james.koukios@usdoj.gov, | **Aurora Fagan, Esq.**<br>Assistant U.S. Attorney<br>United States Attorney's Office<br>99 NE 4 Street<br>Miami, FL 33132<br>Email: aurora.fagan@usdoj.gov |

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants: None.

                                                */s/ Rhonda A. Anderson*_____<br>                                               RHONDA A. ANDERSON, ESQ.