UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-21010-CR-JEM

**UNITED STATES OF AMERICA,**

vs.

**CARLOS RODRIGUEZ,**
    **Defendant.**
_____/

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT RODRIGUEZ'S
APPEAL OF MAGISTRATE'S TEXT ORDER
<u>DENYING RODRIGUEZ' MOTION FOR BOND PENDING APPEAL</u>**

The United States, by and through the undersigned counsel, hereby files this response in opposition to Defendant Carlos Rodriguez's Appeal of Magistrate's Text Order Denying Defendant Rodriguez' Motion for Bond Pending Appeal (DE 639). In his appeal, Rodriguez (1) argues that, despite referring this matter to Judge Dubé for a recommendation, this Court had already decided that Rodriguez had met the standard for obtaining a bond pending appeal; (2) contends that Judge Dubé's recommendation was "insufficient as a matter of law;" and (3) reasserts, as the reasons he should be released on bond pending appeal, the same arguments that this Court has repeatedly and unequivocally rejected. Accordingly, this Court should deny Rodriguez's appeal (DE 639), accept Judge Dubé's recommendation (DE 632), and deny Rodriguez bond pending appeal.

**I.      Standard**

Rodriguez appears to misapprehend the standard for granting a motion for bond pending appeal, as well as comments made by this Court in the course of referring this motion to Judge Dubé. The standard for obtaining a bond pending appeal is not whether a defendant has a

1

"chance" to win on appeal, as Rodriguez appears to contend. Rather, the defendant bears the burden of demonstrating the existence of "a substantial question of law or fact … that if … determined favorably to defendant on appeal, . . . is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed." *United States v. Giancola*, 754 F.2d 898, 901 (11th Cir. 1985); *see also* 18 U.S.C. § 3143(b)(1)(B). "[A] 'substantial question' is one of more substance than would be necessary to a finding that it was not frivolous. It is a 'close' question or one that very well could be decided the other way." *Id*.[1]

Rodriguez appears to believe that this Court's comments in referring this motion to Judge Dubé indicate that the Court has already determined that he has raised a substantial question of law or fact. The government did not interpret the Court's comments as suggesting any such thing. Indeed, if Rodriguez's interpretation were correct, there would have been no reason to refer this motion to Judge Dubé. In reality, the Court scrupulously avoided addressing the merits of this motion during the sentencing hearing. The Court voiced its preference that "a magistrate judge look at all this stuff, give me a recommendation and I will rule on it" because the magistrate judges "know the law [regarding bond] better . . . so let them do it and then I'll worry about if they're right or wrong[.]" *Id*. p. 39, 42. It is true that the Court said that Rodriguez "has a chance of winning," but the Court also stated that it did not think he was going to win. *Id*. pp.

---

[1] Moreover, "harmless errors, errors that have no prejudicial effect, or errors that have been insufficiently preserved would not justify a court's granting bail." *United States v. Bilanzich*, 771 F. 2d 292, 299 (7th Cir. 1985). "If, for example, the strength of the prosecution's case makes clear that the assumed error had no effect on any substantial right of the defendant, or if the assumed error, even though not harmless, would affect fewer than all the counts on which defendant has been sentenced to imprisonment, release pending appeal would not be appropriate, despite the existence of a 'substantial question.'" *United States v. Powell*, 761 F.2d 1227, 1230 (8th Cir. 1985). *See also United States v. Bayko*, 774 F.2d 516, 523 (1st Cir. 1985) ("We also agree with the other circuits that the language in the statute which reads 'likely to result in reversal or an order for a new trial' is a requirement that the claimed error not be harmless or unprejudicial.").

38-39. Neither comment amounts to a ruling on, or even a hint as to a future ruling on, whether Rodriguez satisfied the standard for bond pending appeal.[2]

On the other hand, this Court's rulings on Rodriguez's post-trial motions strongly suggest that the Court will find that Rodriguez has failed to meet his burden of demonstrating that he will be able to raise a "substantial question of law or fact" on appeal. Nothing in the Court's order denying those motions suggest that any of the issues were "close" or "very well could be decided the other way." *Giancola*, 754 F.2d at 901. Rather, the Court unequivocally rejected the very same arguments Rodriguez reasserts here.[3] As explained in Section III below, the Court should do so again. Moreover, because none of the issues raised in this appeal would affect the wire fraud allegations underlying Rodriguez's convictions on Counts 1 and 9-21, Rodriguez cannot show that any appeal is likely to result in a reversal or new trial on "***all counts*** on which imprisonment was imposed." *Giancola*, 754 F.2d at 901 (emphasis added); *Morrison v. United States*, 486 U.S. 1306 (1988) (insufficient to show substantial question as to only some counts); DE 637 (amended judgment); DE 561 at 1-2, 22-23.

## II.  Sufficiency of Judge Dubé's Order

Taken in context, Judge Dubé's order was not, as Rodriguez argues, "insufficient." In his order denying Rodriguez's motion, Judge Dubé expressly indicated that he had "review[ed] the file in this cause[.]" DE 632. At the time of his review, the file included, among other things,

---

[2]  Rodriguez based his post-trial insufficiency argument on a similar logical fallacy. Rodriguez argued that a comment by this Court during trial—"I think you have a chance with your client. I think your client has a chance." Tr. 8/3/2011 AM p. 31—meant that the Court agreed that there was insufficient evidence to support his conviction. This interpretation was, of course, incorrect. DE 609 at 10 (finding sufficient evidence to sustain Rodriguez's conviction).

[3]  The government is not suggesting that the mere rejection of Rodriguez's arguments is dispositive. Rather, it is the unequivocal manner in which the Court rejected his arguments that demonstrates that Rodriguez has not met his burden. This not a case in which the Court suggested that the issues on appeal were close or could very well have gone the other way.

(1) Rodriguez's motion for bond (DE 585), (2) the Government's opposition to that motion (DE 600), which thoroughly explained both the standard for bond pending appeal and why each of Rodriguez's asserted grounds for appeal failed to satisfy that standard, and (3) this Court's orders rejecting each of the defendant's asserted grounds for appeal (DE 609 and 631). With the benefit of these documents, Judge Dubé agreed that the issues raised in Rodriguez's motion for bond did not raise a "substantial question of law or fact" that was "likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed." *Giancola*, 754 F.2d at 901. Thus, while Judge Dubé theoretically could have written more, any such additional writing was unnecessary in light of the clear record before him.[4]

In any event, Judge Dubé's order was not "insufficient as a matter of law" as Rodriguez asserts. The law allows—indeed, presumes—that a defendant be denied bond pending appeal. At most, Rodriguez is arguing that Judge Dubé's order is procedurally insufficient because of its brevity. This Court can easily remedy any such alleged deficiency by remanding to Judge Dubé for a more detailed explanation of his recommendation or by supplying such an explanation in its own order accepting Judge Dubé's recommendation.

**III.   Merits**

    **A. Alleged Jury Instruction Errors**

Rodriguez argues that three aspects of this Court's jury instructions represent such close questions of law as to warrant Rodriguez being granted bond pending appeal. Rodriguez is wrong on several levels. First, none of these jury instruction matters represent the close calls

---

[4] For example, Judge Dubé could have written, "After reviewing the file in this case, and for the reasons stated in the Government's opposition brief and Judge Martinez's orders denying Rodriguez's post-trial motions, Rodriguez has failed to present a substantial question of law or fact that is likely to result in a reversal or an order for a new trial on all counts, and this motion is therefore denied." But, by expressly stating that he had reviewed the file, this additional material is implicit in his order.

Rodriguez claims.  Second, even in the unlikely event that the Eleventh Circuit were to disagree with this Court's instructions, Rodriguez has no colorable claim of prejudice, and any theoretical error would be harmless.  The standard in 18 U.S.C. § 3143(b)(1), however, requires likely *reversal* not just likely *error*.  *See United States v. Bilanzich*, 771 F. 2d 292, 299 (7th Cir. 1985) (harmless or unprejudicial error does not satisfy standard); *United States v. Powell*, 761 F.2d 1227, 1230 (8th Cir. 1985) (same); *United States v. Bayko*, 774 F.2d 516, 523 (1st Cir. 1985) (same).  Third, because none of these instructions affected the wire fraud allegations underlying his convictions on Counts 1 and 9-21, Rodriguez cannot meet his burden of showing a likelihood of reversal or new trial on "***all counts*** on which imprisonment was imposed."  *Giancola*, 754 F.2d at 901 (emphasis added); *accord Morrison*, 486 U.S. 1306.

### 1. *Knowledge*

Rodriguez first claims that this Court's refusal to include in its jury instructions additional language that Rodriguez knew that the bribe was being made to a foreign official is likely to result in reversal.  DE 639 at 5-8.  The government's position is that, to violate the FCPA, a defendant must know or believe he is bribing a government official.[5]  However, as the government explained in its original opposition to the defendant's proposed instruction, this

---

[5] Nothing in the government's proposed jury instructions in *Carson* reflects a change in the government's position.  DE 416 at 7 (reflecting the government's position that "the payment must be intended for an official and not a private individual").  The government has been careful, however, to make clear that to violate the FCPA, defendants do not need to know anything about the legal definition of the term "foreign official." *Id.*  In *Carson*, the parties jointly agreed to make the FCPA instructions more explicit in this respect, clarifying that a defendant (1) does not need to know the legal definition of "foreign official," (2) does not need to know that the bribe recipient fell within the legal definition of foreign official, (3) does not need to know in what the specific capacity the intended official was acting, but (4) does still need to believe that recipient was a foreign official.  DE 580, Exhibit H.  Rodriguez never argued that he was required to know the legal definition of foreign official, so no clarification of this point was necessary at trial.

5

requirement is already encompassed in the FCPA instructions given by the Court. DE 416 at 7; *see also* DE 599 at 4-5.

First, the requirement that the defendant know that the bribes are intended for a foreign official is encompassed in the *mens rea* instructions given by the Court, in particular the definition of "corruptly." The language used by the Court tracks the language approved by the Fifth Circuit in *United States v. Kay* concerning the FCPA's *mens rea* requirement. 513 F.3d 461, 463 (5th Cir. 2008). It is also the language used in all post-*Kay* FCPA jury instructions to date. *See United States v. Aguilar*, 2:10-CR-1031(A), DE 511 at 35 (C.D. Ca. May 16, 2011); *United States v. Jefferson* 1:07-CR-209, DE 684 at 75-87 (E.D. Va. July 30, 2009); *United States v. Bourke*, 2:05-CR-518 at 24-25 (S.D.N.Y); *United States v. Green*, 2:08-CR-59, DE 288 at 10 (C.D. Ca. Sept. 11, 2009). This instruction explains that the term "corruptly" is intended to connote that the payment was "intended to induce the foreign official to misuse his official position." DE 520 at 21-22. A jury properly instructed on "corruptly" in the FCPA context will be in no danger of convicting on the basis of payments intended for recipients who are not foreign officials and have no official positions to misuse.

Second, this Court instructed the jury that "the payment or gift was to a foreign official or to any person, **while the defendant knew** that all or a portion of the payment or gift would be offered, given, or promised, directly or indirectly, **to a foreign official**." DE 520 at 20 (emphasis added). This instruction makes clear that a person could not have violated the FCPA unless he knew that the bribe was intended for a foreign official. Thus, while the instruction in this case was worded slightly differently than the instruction proposed in *Carson*, the knowledge requirement is no less present. *Accord United States v. Gold*, 743 F.2d 800, 821 (11th Cir. 1984) ("[A]lthough a defendant may request a specific instruction the court is not obligated to use the

6

exact wording of the proposed instruction as long as the words chosen clearly and accurately state the proposition being requested.") (internal citation omitted). Rodriguez claims that the word "knew" only modifies the phrase "payment or gift," but such an interpretation does not make sense. DE 639 at 8. No reasonable juror would interpret this phrase, especially in the context of both the instructions and the trial as a whole, as merely requiring that a defendant knew that there was a payment; instead, the whole crux of an FCPA bribery case is that the individual knew that the payment was given or promised to an official, either directly or indirectly.

Finally, Rodriguez argues that the government's closing argument should not be considered when viewing the Court's jury instructions. DE 639 at 8. In fact, the opposite is true. It is well established that "[w]hen reviewing the jury's understanding of the charge, [courts] look to the total context of the trial, with the benefit of arguments by all counsel." *United States v. Kay*, 513 F.3d 461, 463 (5th Cir. 2008); *see also Cupp v. Naughten*, 414 U.S. 141, 146–47 (1973) (explaining that when an instruction is "viewed in the context of the overall charge" part of that context is the "argument of counsel"). During closing, the government directly acknowledged its burden of proving Rodriguez's knowledge that he was bribing a foreign official. Further, a whole section of the government's closing argument was dedicated to the proof at trial of this point—the "overwhelming evidence that Esquenazi and Rodriguez knew their customer, knew their most important customer was a part of the Haitian government." Tr. 8/23/2011 AM at 74. Likewise, Rodriguez argued to the jury that "there are two elements of knowledge that need to be satisfied in order to have a violation of the Foreign Corrupt Practices Act" and the second one is that "you have to know that it is a government official." Tr. 8/3/2011 PM pp. 67-68; *see also id.* p. 6 (Esquenazi arguing that the government failed to prove he knew

7

Teleco was state owned). Indeed, there was copious evidence that Rodriguez knew that Teleco was a state-owned entity, including discussions with an AON insurance representative, an email from Teleco's counsel explaining that Teleco was an "instrumentality of the Haitian Government," evidence that both his superior, Esquenazi, and his subordinate, Perez, knew that Teleco was a government entity, and numerous documents and emails that established that fact.

Given that the jury instructions were correct, that all parties argued to the jury that Rodriguez had to know that the payments were given or promised to a Haitian official, and that the evidence was overwhelming that Rodriguez knew this fact, there is no both no error nor conceivable prejudice that would make for a likely reversal permitting bond. *Bilanzich*, 771 F.2d at 299; *Powell*, 761 F.2d at 1230; *Bayko*, 774 F.2d at 523. Furthermore, this argument is inapplicable to the wire fraud allegations underlying Counts 1 and 9-21, of which Rodriguez was also convicted and for which he was also imprisoned. *Giancola*, 754 F.2d at 901; *accord Morrison*, 486 U.S. 1306.

### 2. Government Instrumentality

Rodriguez raises as a second basis for bond the instruction given by the Court concerning what constitutes a government instrumentality. However, the Court's instruction, which was a multi-factor, non-exclusive test, comports with the other decisions concerning this issue and common sense. Furthermore, given the overwhelming evidence that Teleco was, in fact, a government instrumentality, there is no potential prejudice.

The Court's comprehensive instruction, in full, was as follows:

> An "instrumentality" of a foreign government is a means or agency through which a function of the foreign government is accomplished. State-owned or state-controlled companies that provide services to the public may meet this definition. To decide whether Telecommunications D'Haiti or Teleco is an instrumentality of the government of Haiti, you may consider factors including but not limited to:

8

>   (1)   whether it provides services to the citizens and inhabitants of Haiti;
>
>   (2)   whether its key officers and directors are government officials or are appointed by government officials;
>
>   (3)   the extent of Haiti's ownership of Teleco, including whether the Haitian government owns a majority of Teleco's shares or provides financial support such as subsidies, special tax treatment, loans, or revenue from government-mandated fees;
>
>   (4)   Teleco's obligations and privileges under Haitian law, including whether Teleco exercises exclusive or controlling power to administer its designated functions; and
>
>   (5)   whether Teleco is widely perceived and understood to be performing official or governmental functions.
>
>   These factors are not exclusive, and no single factor will determine whether Telecommunications D'Haiti or Teleco is an instrumentality of a foreign government. In addition, you do not need to find that all the factors listed above weigh in favor of Teleco being an instrumentality in order to find that Teleco is an instrumentality.

Rodriguez raises three complaints about the Court's instruction. First, he argues that the jury should have been instructed "to find each element used to determine that an entity was a state-owned entity beyond a reasonable doubt." DE 639 at 9. Rodriguez cites no authority whatsoever for such a proposition. Both of the district court decisions on this point to date provide non-exclusive lists of factors for a jury to consider. *United States v. Carson*, 8:09–CR-77-JVS, DE 373 (C.D. Ca. May 18, 2011); *United States v. Aguilar*, 2:10-CR-1031(A), DE 474 (C.D. Ca. Apr. 20, 2011). Such an approach makes sense. Juries regularly decide issues of fact—such as whether a Teleco official was a "foreign official"—by resort to many different factors. For example, when deciding whether a defendant acted willfully, a jury might ask itself whether the defendant concealed his actions, whether he acted in a guilty manner, his credibility on the witness stand, other testimony against him, whether his behavior was consistent with that

9

of an innocent person, and inferences from documents.  Each of these factors could weigh for or against a finding that a defendant had the requisite intent, but a jury need not determine that each factor had been proven beyond a reasonable doubt.[6]  *Accord, e.g.*, 11th Cir. Crim. Basic Instr. 5 (2010) (setting forth factors for the jury to consider in assessing witness credibility); 11th Cir. Crim. Special Instr. 3 (2010) (same for identification testimony); 11th Cir. Crim. Offense Instr. 29 (instructing jury to consider "circumstances" under which a statement was made to determine whether it was a threat).

Second, Rodriguez argues that the instruction did not require the jury to consider Teleco's formation or whether the laws of the country defined the employees as government employees.  DE 639 at 9.  However, the fourth factor of the Court's instructions advised the jury that it could consider "Teleco's obligations and privileges under Haitian law."  *Accord United States v. Carson*, 8:09–CR-77-JVS, DE 373 at 5 (C.D. Ca. May 18, 2011) (listing "obligations and privileges under the foreign state's law" as one factor a jury could consider).  Given the fact that Teleco's formation and the obligations of certain Teleco officials under Haiti's asset declaration law were contested issues throughout the trial, the jury was fully informed on these issues and could consider them both explicitly under the fourth factor or more generally, as the list was non-exclusive.

Finally, Rodriguez complains that the "general opinion of individuals" was an impermissible factor for inclusion in this instruction.  DE 639 at 9-10.  However, the Court's actual factor, that the jury could consider whether "Teleco is widely perceived and understood to

---

[6]     Indeed, in *United States v. Aguilar*, despite providing a non-exclusive list of characteristics in its opinion concerning what constitutes a government instrumentality, 2:10-CR-1031(A), DE 474 at 9 (C.D. Ca. Apr. 20, 2011), the court did not provide any of those characteristics to the jury in its instructions, 2:10-CR-1031(A), DE 511 at 99 (C.D. Ca. May 16, 2011).

be performing official or governmental functions," was both warranted and appropriate. *See United States v. Aguilar*, 2:10-CR-1031(A), DE 474 at 9 (C.D. Ca. Apr. 20, 2011) (listing as a non-exclusive characteristic of a government instrumentality that "[t]he entity is widely perceived and understood to be performing official (i.e., governmental) functions"). Although various functions such as telephone service may be perceived as private in the United States, the opposite is often true in countries with more pervasive nationalization. That people in Haiti commonly perceived Teleco as a government entity is a relevant factor in this determination.

In short, the Court's "government instrumentality" instruction was proper. However, even assuming *arguendo* that the Court did err (it did not), the evidence concerning Teleco's governmental nature was overwhelming. *See, e.g.*, DE 584 at 2-5. Teleco was 97% government-owned and 100% government-controlled, its Director General was appointed by the then-President of Haiti, and Terra's own in-house lawyer described it as "instrumentality of the Haitian Government" during the time period alleged in the indictment. Consequently, there is no viable claim of prejudice and therefore no basis for bond. *Bilanzich*, 771 F.2d at 299; *Powell*, 761 F.2d at 1230; *Bayko*, 774 F.2d at 523. Furthermore, this argument is inapplicable to the wire fraud allegations underlying Counts 1 and 9-21, of which Rodriguez was also convicted and for which he was also imprisoned. *Giancola*, 754 F.2d at 901; *accord Morrison*, 486 U.S. 1306.

### 3. Deliberate Ignorance

Third, Rodriguez argues that the FCPA-specific deliberate ignorance instruction "is not proper merely because the FCPA contains language allowing for it." DE 639 at 10. Rodriguez misreads the statute. The FCPA ***defines*** knowledge to include constructive knowledge. 15 U.S.C. § 78dd-2(h)(3)(B) ("When knowledge of the existence of a particular circumstance is required for an offense, such knowledge is established if a person is aware of a high probability

of the existence of such circumstance, unless the person actually believes that such circumstance does not exist."). Therefore, the Court's instructions appropriately track this statutory definition. DE 520 at 25.

With regard to the general deliberate ignorance instruction, the Court's language was derived from Eleventh Circuit Criminal Special Instruction 8. Rodriguez is incorrect that such an instruction was not warranted because it lacked a factual predicate. DE 639 at 12. Although the government presented evidence that Rodriguez, in fact, knew of the bribery scheme when he worked to perpetuate the bribes, Rodriguez's defense was to attack the credibility of the government's witnesses, especially Perez, and to argue that he signed checks in the routine course of business and with no criminal intent. *See, e.g.*, Tr. 8/3/2011 PM pp. 75-77 (arguing in closing that signing checks was not evidence of guilt).

> Consequently, the government also adduced evidence at trial that Rodriguez was aware of various red flags (for example the nature of the documents that were being requested and signed and the status of the parties that were being paid), which established a high probability that the payments were bribes and yet deliberately proceeded without requiring the usual, back up documentation before authorizing payment. Therefore, the Court did not error in including instructions on deliberate ignorance.

DE 520 at 26, 35; 15 U.S.C. 78dd-2(h)(3)(B); *see also United States v. King*, 351 F.3d 859, 866-67 (8th Cir. 2003); *Gold*, 743 F.2d at 822 (deliberate ignorance instruction appropriate where "[t]he entire defense case … rested on the argument that the defendants—despite their supervisory responsibilities and 'hands-on' management style—were innocently oblivious to the endemic fraud that permeated [the] entire … operation").

### B. Bellerive Declarations

The government has repeatedly explained—and the Court has agreed—that the government did not suppress the Bellerive declaration or any information contained therein,

nothing in the Bellerive declaration constituted "newly discovered evidence," and the Bellerive declaration would have had no effect on the jury's verdict.  The government hereby incorporates by reference its prior arguments and the Court's ruling, DE 609 at 23 ("The Court however finds that the declaration provides no newly discovered evidence and would not have affected the jury verdict."); DE 561 at 17-23; DE 584 at 10-13; DE 599 at 6-7, and adds the following only for sake of clarification.

Rodriguez appears to pin his entire argument on his improper and unsupported allegation that the first Bellerive declaration represents the "official" position of the Haitian government regarding Teleco's status.  Nothing could be further from the truth.  As the government previously explained:

> The Republic of Haiti has provided unwavering support throughout the United States' investigation and prosecution of the bribery that occurred at Teleco. As this Court knows from the trial testimony, the Haitian government produced numerous records to the United States, both informally and in response to the United States' formal requests for evidence, and waived its attorney client privilege with its former civil attorneys to ensure that the United States' investigation received all extant evidence. Indeed, even after the devastating earthquake in Haiti and despite a humanitarian crisis, the Haitian government continued to assist the United States in its trial preparations by completing a foreign records certification so the documents it produced would be admissible in court. The National Police of Haiti, through the Financial and Economics Bureau, conducted its own investigations into the crimes and submitted their reports to the United States, which were also produced in discovery. In addition, the government of Haiti agreed to arrest two of its former officials—Robert Antoine and Jean Rene Duperval—and expel them to the United States to stand trial on this indictment. This extraordinary level of cooperation is a product of how the Haitian government viewed the bribery at issue in this prosecution: as a serious crime perpetrated in part by its own officials and of which it was the victim. The defendants' argument that the official position of the Haitian government is that no crime occurred because Teleco was a private entity is belied by this record of strong and continued support.

DE 584 at 8.  Far from constituting the "official" position of the government of Haiti, the first Bellerive declaration is, as its author later admitted, confusing if taken out of context.  *See* DE

561 at 19-20. For example, the first declaration, for whatever reason, omits most of Teleco's history, including "the fact that, after the initial creation of Téléco and prior to its modernization, it was fully funded and controlled by BRH [the Bank of the Republic of Haiti], which is a public entity of the Haitian state." DE 563, Ex. 1 ¶ 5. In contrast, the second Bellerive declaration is clearly written, more historically complete, in line with the evidence presented at trial and, perhaps most importantly in the context of Rodriguez's allegations regarding Haiti's "official" position, entirely consistent with the actions actually taken by the Haitian government in its staunch support of this prosecution over the course of several years.

To the extent that Rodriguez's argument is based on the alleged discrepancies between the two Bellerive declarations, this is wholly irrelevant to the verdict against him. Mr. Bellerive did not testify at Rodriguez's trial. His first declaration could not have been used to impeach Mr. Lissade. *See* DE 561 at n.7; DE 584 at n.8. And even if it could have been, "impeachment evidence alone is not enough to merit a new trial." *United States v. Thompson*, 335 F. App'x 876, 881 (11th Cir. 2009). For these reasons, the origin of the discrepancy between the two declarations is similarly irrelevant: this information could not have been used at trial and would not have affected Rodriguez's conviction. DE 609 at 28.[7]

Furthermore, this argument is inapplicable to the wire fraud allegations underlying Counts 1 and 9-21, of which Rodriguez was also convicted and for which he was also imprisoned. *Giancola*, 754 F.2d at 901; *accord Morrison*, 486 U.S. 1306.

---

[7] Other than what Mr. Bellerive stated in his second declaration and the extremely limited information provided by Rodriguez, the government has no other information regarding the origin or purpose of the first declaration. However, given the long history of cooperation by the Haitian government in this case, the confusing and incomplete nature of the first declaration (for example, that declaration's omission of any discussion regarding over 40 years of Teleco's 42 years of existence), and the fact that the second declaration is more complete and consistent with the facts elicited during trial, the government has no reason to doubt the statements regarding Teleco's nature contained in the second declaration.

**IV.     Conclusion**

Because Rodriguez has failed to satisfy his burden of demonstrating that any appeal would raise a substantial question of law or fact that is likely to result in reversal, an order for a new trial, a sentence that does not include a term of imprisonment, or a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process, detention is mandatory.  18 U.S.C. § 3143(b); *Giancola*, 754 F.2d at 901. Accordingly, his appeal should be denied.

    Respectfully submitted,
    WIFREDO A. FERRER
    UNITED STATES ATTORNEY

    Aurora Fagan
    Assistant United States Attorney
    500 S. Australian Ave
    Suite 400
    West Palm Beach, Florida 33401
    (561) 820-8711

    Nicola J. Mrazek
    Senior Trial Attorney
    Fraud Section, Criminal Division
    U.S. Department of Justice
    1400 New York Ave., N.W.
    Washington, DC 20005
    (202) 514-8122

    /s/James M. Koukios
    James M. Koukios
    Senior Trial Attorney
    Court ID No. A5500915
    Fraud Section, Criminal Division
    U.S. Department of Justice
    1400 New York Ave., N.W.
    Washington, DC 20005
    (202) 616-5535

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that I electronically filed the foregoing document with the Clerk of the Court and defense counsel using CM/ECF on November 21, 2011.


By: /s/ James M. Koukios
James M. Koukios
Senior Trial Attorney
U.S. Department of Justice